# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH JAMES GREER,

       Plaintiff,

vs.                                No. 3:15-cv-02307-WHO

CITY OF HAYWARD, BAY AREA RAPID
TRANSIT, and DOES 1-50,

       Defendants.

_____/

DEPOSITION OF SERGEANT JON TOUGAS

Taken before LISA LOUNDAGIN

Certified Shorthand Reporter

State of California

CSR 9213

Wednesday, September 28, 2016

1        BE IT REMEMBERED that pursuant to Notice of

2   Taking Deposition, and on Wednesday, September 28, 2016,

3   commencing at the hour of 10:15 a.m., at HALEY LAW

4   OFFICES, 1633 San Pablo Avenue, Oakland, California 94612,

5   before me, LISA LOUNDAGIN, a Certified Shorthand Reporter

6   in and for the State of California, personally appeared

7                    SERGEANT JON TOUGAS,

8   produced as a witness in the above-entitled action, who

9   being by me first duly sworn, was thereupon examined as a

10  witness in said action.

11

12                         ---oOo---

13

14        MATTHEW D. HALEY, Esq., Haley Law Offices,

15  1633 San Pablo Avenue, Oakland, California 94612, appeared

16  on behalf of the Plaintiff.

17

18        FULVIO F. CAJINA, Esq., Law Offices of Fulvio F.

19  Cajina, 311 Oak Street, Suite 108, Oakland, California

20  94607, appeared on behalf of the Plaintiff.

21

22        STANLEY C. GOFF, Esq., Law Offices of Stanley

23  Goff, 15 Broadman Place, Suite 2, San Francisco,

24  California 94103, appeared on behalf of the Plaintiff.

25

1     **A**   Yes, sir.

2     **Q**   All right. It's important to me that not only I
3 learn today what you know about the event, but what you
4 don't know about the event. Okay?

5     **A**   Yes.

6     **Q**   If I ask a question that you don't understand,
7 will you tell me you don't understand it?

8     **A**   Sure.

9     **Q**   When we're done here, in a couple of weeks
10 you'll get a booklet that will have all of my questions
11 and all of your answers to those questions. You have the
12 right to go through the booklet and make any changes you
13 want. You can scratch an answer out that you gave today
14 and put something else in there.

15     You should know, however, that if you make a
16 substantive change, I can comment on that should the
17 matter go to trial, and try to make you look bad and say,
18 you know, "He told us this on the day of the deposition,
19 and then he scratched it out and changed it." Okay?

20     **A**   Yes.

21     **Q**   So we'll take our time. Any breaks you want,
22 anything I can do to make this easier for you, you let me
23 know. Okay?

24     **A**   Yes.

25     **Q**   Have you read or reviewed any documents or video

```
 1   in preparation for your deposition here today?
 2        A    Yes.
 3        Q    All right.  And what have you read or reviewed?
 4        A    I reviewed the video from my mobile video
 5   recorder, an interview that I gave to Hayward Homicide
 6   inspectors, and our use of force policy at the BART Police
 7   Department.
 8        Q    Just so I can get this out of the way, did the
 9   video that you took on that evening accurately depict the
10   events that were shown in the video?
11             MR. ROONEY:  Objection to the extent that the
12   video does not capture the entire event, it just captures
13   one angle of it.
14             MR. HALEY:  So that's why I added the phrase --
15             MR. ROONEY:  I know.
16             MR. HALEY:  Okay.
17             THE WITNESS:  So repeat it, please.
18             MR. HALEY:  Could you read that one back?
19             (Record read.)
20             THE WITNESS:  Yes.
21             MR. HALEY:  Q.  Okay.  And the video that you
22   took that evening is the same video that you reviewed in
23   preparation for your deposition here today?
24        A    Yes.
25        Q    Okay.  And then you reviewed the recorded
```

Page 27

1  Q   All right. And what is this document?
2  A   Individual Training Activity.
3  Q   And is this a document which is intended to list
4  all of the training activity that you have had during your
5  time with BART? Well, let's say going back to March of
6  2010.
7  A   Yes.
8      MR. ROONEY: Actually, it goes back to May of
9  '09.
10     MR. HALEY: Yeah, Counsel.
11     THE WITNESS: From graduation of the academy.
12     MR. HALEY: Q. All right. And on the last page
13 there, it says, "May 15th, 2009: Basic course -
14 intensive." Is that the -- is that the academy?
15 A   I believe so, yes.
16 Q   Okay. And then just above that, on June 2nd of
17 2009, you received training in electronic weapons?
18 A   Yes.
19 Q   All right. Is this a comprehensive list of your
20 training during those years?
21 A   Comprehensive meaning?
22 Q   Were there training activities that you pursued
23 in these years that are not included on this list?
24 A   To my knowledge, no.
25 Q   All right. Did you receive CPR training on May

1   the 22nd of 2014?

2       A   It appears as I did per this document.

3       Q   Do you recall whether or not you received any
4   written materials with respect to that CPR training?

5       A   I don't recall.

6       Q   Do you remember where you received the CPR
7   training?

8       A   I believe it would have been at our training
9   facility at -- well, it's called the MTC building --

10      Q   Okay.

11      A   -- at Lake Merritt headquarters.

12      Q   Not only on that day, but during your CPR
13  training before, did you learn as part of your training to
14  recognize someone who was having difficulty breathing?

15          MR. ROONEY:  Objection.  Vague as to the term
16  difficulty breathing.

17          MR. HALEY:  Q.  Sometimes they use the term
18  labored breathing.  Let me change the question to that.

19          As of the completion of your CPR course on May
20  the 22nd of 2014, did you consider yourself able to
21  determine if someone had labored breathing?

22          MR. ROONEY:  Same objection.

23          MR. KADOTANI:  Join.

24          THE WITNESS:  Not that I recall, no.

25          MR. HALEY:  Q.  As of the conclusion of that

1  guess.  When you say, "I probably said" --

2      A   Oh, okay.

3          MR. ROONEY:  Yeah.

4          THE WITNESS:  Sorry.

5          MR. ROONEY:  Definitely don't guess.

6          THE WITNESS:  Sorry, sorry.

7          MR. ROONEY:  Give him an accurate --

8          MR. HALEY:  Q.  Yeah.

9      A   So I stuck around --

10     Q   Okay.

11     A   -- for cover.

12     Q   Did he ask you to stick around?

13     A   Did he ask me to stay?

14     Q   Yes.

15     A   I don't think so.

16     Q   All right.  And was Mr. Greer still in his

17 vehicle when you got there?

18     A   Yes.

19     Q   All right.  From the time you arrived until the

20 time Mr. Greer got out of the truck, I want you to tell me

21 everything you remember you said to the lieutenant and

22 everything the lieutenant said to you.

23     A   So from the time I approached the lieutenant to

24 when?

25     Q   To when Mr. Greer got out of the truck.

1   **A**   So I walked up to now the lieutenant, that I
2   know now. I think I asked him, "Do you want me to stick
3   around?
4           "Yes.
5           "If I do, I have to turn on my camera.
6           "Go ahead."
7           I turned on my camera.
8           I think he said, "I've got another unit coming."
9           As soon as another unit arrived on scene, he
10  told me he was gonna do -- or no. Initially, he told me,
11  "He pulled away from me twice," which I now know was a
12  traffic stop.
13          So I said, "Okay." So I stayed.
14          Oh, he also told me, "He's a big man.
15          "Okay."
16  **Q**   Okay. Do you remember anything else he said to
17  you or you said to him from the time you arrived until the
18  time Mr. Greer got out of the truck?
19  **A**   Other than he was gonna do FSTs on him.
20  **Q**   Okay. All right. I'm going to keep asking you
21  that question until you say you don't remember anything
22  else.
23          So other than what you've told me, do you
24  remember anything else you said to him or he said to you?
25  **A**   Not that I recall.

1  couple steps to the side, correct?

2  A  I believe so.

3  Q  All right. And is that what you have described
4  as him walking away when he took a couple steps to the
5  side?

6  MR. ROONEY: Assumes facts not in evidence that
7  it was a couple steps.

8  MR. HALEY: Q. Yeah, and I don't mean to put a
9  couple in it, but there was --

10  A  I would say he was going to walk away from the
11  lieutenant.

12  Q  All right. My question is a little different.
13  He did, in your memory and on the video, take some number
14  of steps sideways. Do you recall that?

15  A  I don't know if they were sideways or if he
16  turned.

17  Q  All right. Did he turn and walk away from the
18  lieutenant?

19  A  I think so.

20  Q  All right. What did you do in response to that?

21  A  Approached Mr. Greer.

22  Q  And what did you do then?

23  A  I believe I grabbed the back of his T-shirt.

24  Q  Okay. And then what happened next?

25  A  The struggle was on.

Page 57

1　　Q　All right. And did you have assistance from the
2　lieutenant?
3　　A　I believe so.
4　　　　MR. ROONEY: Objection. Vague.
5　　　　MR. HALEY: Q. Okay. And the other two -- by
6　that point, did you realize there were two more Hayward
7　officers there?
8　　A　The entire time I thought there was Lieutenant
9　Lutzinger, another Hayward officer, and myself.
10　　Q　Okay. And when the struggle began, that was
11　when you thought there was just the three of you and
12　Mr. Greer?
13　　A　Yes, sir.
14　　Q　All right. Did you take Mr. Greer down to the
15　ground?
16　　　　MR. ROONEY: Objection. Vague.
17　　　　MR. KADOTANI: Join.
18　　　　MR. ROONEY: Do you mean with takedown technique
19　taught in defensive tactics?
20　　　　MR. HALEY: Q. You can go ahead and answer the
21　question.
22　　　　MR. ROONEY: The question is vague. You can
23　answer it if you can.
24　　　　THE WITNESS: I tried, along with the other two.
25　　　　MR. HALEY: Q. All right. And you and the

1   moments after you said, "He's unconscious"?

2       **A**   I believe I got up and walked away.

3       **Q**   All right. What did you do after that? Let me
4   go back.

5           So after you got up and walked away, you
6   couldn't see what was going on with Mr. Greer, I take it.

7       **A**   I think you're right.

8       **Q**   And I take it that's why you can't tell me who
9   or when the other portions of the WRAP were put on 'cause
10  you didn't see that, true?

11          MR. KADOTANI: Assumes facts not in evidence,
12  lacks foundation.

13          THE WITNESS: True.

14          MR. HALEY: Q. All right. Did you -- when you
15  got up and walked away, did you see whether or not
16  emergency personnel were standing by?

17      **A**   I remember hearing somebody stating, "Medical's
18  on scene," or medics or whoever, however they said it.

19      **Q**   Okay. So you heard somebody say that, right?
20      **A**   Yes.
21      **Q**   Did you see any medics on scene as you turned to
22  go away from Mr. Greer?
23      **A**   I remember seeing a fire truck.
24      **Q**   Okay. Was it a fire truck or an ambulance or a
25  paramedic truck that you saw?

1   the T-shirt?

2       **A**   True.

3       **Q**   And the other officers grabbed other parts of
4   him, true?

5       **A**   I assume.

6       **Q**   All right. And --

7       **A**   Nope, sorry.

8           MR. ROONEY: Don't guess what other officers
9   did.

10          THE WITNESS: I don't know what they were doing.

11          MR. HALEY: Q. Okay. But your effort was to
12  take him to the ground --

13      **A**   Yes.

14      **Q**   -- true?

15          MR. ROONEY: Objection.

16          MR. HALEY: All right. Don't --

17          THE WITNESS: I'm sorry.

18          MR. ROONEY: A, it's vague as to time. B, the
19  term take to the ground is vague and calls for an expert
20  opinion.

21          MR. HALEY: All right.

22          MR. ROONEY: Just because he suggests something,
23  you don't have to agree with it.

24          THE WITNESS: When --

25          MR. HALEY: Q. Well --

1                THE WITNESS:  On his sides.

2                MR. HALEY:  Q.  Okay.

3         A     His right and left side.

4         Q     And this is gonna sound like a stupid question,
5    but I have to ask it.  Do you know whether they wanted, as
6    you did, to take Mr. Greer down to the ground?

7                MR. KADOTANI:  Calls for speculation, lacks
8    foundation.

9                MR. ROONEY:  So stipulated.

10               THE WITNESS:  I don't know.

11               MR. ROONEY:  Calls for speculation.

12               MR. HALEY:  Q.  All right.  Well, they didn't
13   say anything like, "Get him down.  Get him down"?  Did you
14   hear either one of them yell anything like that?

15        A     I don't recall.

16        Q     All right.  Were you able to take him down to
17   the ground?

18        A     Was I?

19        Q     Perhaps with the assistance of the Hayward
20   officers.

21        A     We ended up on the ground.

22        Q     All right.  I believe I read somewhere that he
23   landed on top of you.  Is that -- do you remember that?
24   Do you remember how you landed on the ground?

25               MR. ROONEY:  I'm sorry, what was the question?

Page 84

1 rolled him over, was -- in your mind, it was just you and
2 two Hayward Police officers, or were you aware that others
3 had arrived?
4    A    No, I knew there was more now.
5    Q    Okay. And after you rolled him over, what did
6 you see?
7    A    His eyes were closed. And I just told whoever
8 was there, "Hey, he's unconscious."
9    Q    All right. As soon as you rolled him over, was
10 it your impression that he was unconscious?
11    A    Yes.
12    Q    All right. Did you have any sensation that he
13 was faking being unconscious?
14    A    Didn't think of that.
15    Q    All right. At the moment you rolled him over,
16 had any part of the WRAP been put on his -- put on him?
17    A    I think I heard them saying they were putting
18 the ankle part.
19    Q    Okay. Did you see them putting the ankle part
20 of the WRAP on before you rolled him over?
21    A    No.
22    Q    Okay. When you rolled him over, did you look
23 and see an ankle portion on the -- on his legs?
24    A    I don't recall.
25    Q    When you rolled him over -- you may not know

1    MR. HALEY: Q. Okay. Having looked at the
2 video, does that refresh your recollection as to whether
3 or not Mr. Greer, as shown in Exhibit 3, is accurately
4 depicted?
5    A    Yes.
6    Q    All right. Okay. After this moment -- strike
7 that. I should be clearer.
8        Did Hayward Police Officers continue to put the
9 WRAP on Mr. Greer after you said, "He's unconscious"?
10        MR. KADOTANI: Calls for speculation, lacks
11 foundation.
12        THE WITNESS: I don't know.
13        MR. HALEY: Q. Okay. Did you see Hayward
14 Police Officers put on Mr. Greer the leg portion of the
15 WRAP?
16        MR. KADOTANI: Calls for speculation, lacks
17 foundation.
18        THE WITNESS: No.
19        MR. HALEY: Q. Okay. Did you see Hayward
20 Police Officers put the chest portion of the WRAP on
21 Mr. Greer?
22        MR. KADOTANI: Calls for speculation, lacks
23 foundation.
24        THE WITNESS: No.
25        MR. HALEY: Q. Okay. What did you do in those

1　　　　　　　　　CERTIFICATE OF REPORTER

2

3　　　　　I, LISA LOUNDAGIN, hereby certify that the

4　witness in the foregoing deposition was by me duly sworn

5　to tell the truth, the whole truth, and nothing but the

6　truth in the within-entitled cause;

7

8　　　　　That said deposition was taken in shorthand by

9　me, a Certified Shorthand Reporter of the State of

10　California, and was thereafter transcribed into

11　typewriting, and that the foregoing transcript constitutes

12　a full, true, and correct report of said deposition and of

13　the proceedings which took place;

14

15　　　　　That I am a disinterested person to the said

16　action.

17

18　　　　　IN WITNESS WHEREOF, I have hereunto set my hand

19　this _____ day of _____, 2016.

20

21

22　　　　　　　　　　　　　　　　_____

23　　　　　　　　　　　　　　　　LISA LOUNDAGIN

24　　　　　　　　　　　　　　　　CSR No. 9213

25