# EXHIBIT 11

MATTHEW D. HALEY (Bar No. 104493)
THE HALEY LAW OFFICES
1633 San Pablo Avenue
Oakland, CA 94612
Telephone: (510) 444-1881
Facsimile: (510) 444-5108
Email: matt@haleylaw.com

FULVIO F. CAJINA (Bar No. 289126)
LAW OFFICE OF FULVIO F. CAJINA
311 Oak Street, Suite 108
Oakland, CA 94607
Telephone: (415) 601-0779
Facsimile: (510) 444-5108
Email: fulvio@cajinalaw.com

STANLEY C. GOFF (SBN 289564)
LAW OFFICES OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9471
Email: goffs@mail2world.com

Attorneys for Plaintiff JOSEPH GREER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JAMES GREER<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HAYWARD, BAY AREA RAPID TRANSIT, and DOES 1-50,<br><br>Defendants. | Case No.: 3:15-cv-02307-WHO<br><br>INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(2)(B) OF KENT R. OLSON, M.D. |

I, KENT R. OLSON, M.D. declare as follows:

My Qualifications: I received my medical degree (M.D.) from the University of California, San Francisco in 1978. I completed board certification in emergency medicine and medical toxicology. I have been active in the practice of medical toxicology since 1982, during which time I have served as Managing Director and Medical Director of a large regional poison control

INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(2)(B)

e

center at the University of California. I have published more than 100 articles in the peer-reviewed medical literature, and I am the editor of the leading handbook of poisoning diagnosis and treatment (Poisoning and Drug Overdose, McGraw-Hill, 2011), now in its 6th edition. I regularly provide medical toxicology consultations by telephone and at the bedside at San Francisco General Hospital. A copy of my Curriculum Vitae is attached at Exhibit 1.

On occasion, I provide expert advice and testimony in civil and criminal matters. My usual fee for review, research, deposition and testimony is $500/hour. Since 2012, I have testified as an expert in trial or deposition in two cases:

- (2014) Oh v Fong (California): Civil medical malpractice case
- (2015) Stafford v Dignity (Arizona): Civil medical malpractice case

I have reviewed the following records with respect to this matter:

- Videotape of the interaction between police and Mr. Greer
- Coroner Investigator's Report (Case number 2014-01567)
- Autopsy Protocol by Thomas Wayne Rodgers, MD dated May 27, 2014
- Report of Histological Examination by Thomas Wayne Rodgers, MD dated 6-19-14
- Central Valley Toxicology report # CVT-14-7090
- Deposition of Bill L. Posey taken on June 23, 2016
- Paramedics Plus report,
- Hayward Fire Department Report
- St. Rose Hospital Records
- Police report
- Deposition of Thomas Wayne Rogers M.D.
- Medical literature related to phencyclidine intoxication:
    - Bailey DN: Phencyclidine abuse: clinical findings and concentrations in biological fluids after nonfatal intoxication. Am J Clin Pathol 1979; 72:795
    - Barceloux DG: Phencyclidine and Phencyclidine Analogs. In Medical Toxicology of Drug Abuse. John Wiley and Sons, Hoboken, New Jersey, 2012. pp 608-641.
    - Baselt RC: Phencyclidine. In Disposition of Toxic Drugs and Chemicals in Man. 9th Edition. Biomedical Publications, Seal Beach, California, 2011. pp 1323-1325
    - Caplan YH, Orloff KG, Thompson BC, Fisher RS: Detection of phencyclidine in medical examiner's cases. J Anal Toxicol 1979; 3:47.

INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(2)(B)

e

- Cravey RH, Reed D, Ragle JL: Phencyclidine-related deaths: a report of nine fatal cases. J Anal Toxicol 1979; 3:199
- deRoux SJ, Sgarlato A, Marker E: Phencyclidine: a 5-year retrospective review from the New York City Medical Examiner's Office. J Forens Sci 2011; 56(3):656.
- O'Halloran RL, Frank JG: Asphyxial death during prone restraint revisited: a report of 21 cases. Am J Forens Med Pathol 2000; 21(1):39.
- Poklis A, Graham M, Maginn D et al: Phencyclidine and violent deaths in St. Louis Missouri: a survey of medical examiners' cases from 1977 through 1986. Am J Drug Alcohol Abuse 1990; 16: 265.

I anticipate that I will use the video of the incident as an exhibit to my testimony. I understand additional information may be made available to me and reserve the right to amend my opinions or to have additional opinions based on such additional information.

Based on the information I have reviewed, I have the following opinions. Each opinion is based upon a reasonable medical probability or to a reasonable medical certainty.

Based on my review of the videotape, JG exhibited no signs of serious or life-threatening phencyclidine (PCP) intoxication during his initial interaction with the police. He appeared alert, cooperative, able to follow commands, and was able to walk without stumbling or falling. He did not appear delirious, agitated or combative. He appeared to experience pain in response to Taser applications.

James Greer did not die as a direct result of phencyclidine intoxication, but as a consequence of his physical interaction with the police. Death from phencyclidine alone is very uncommon and would be expected to occur in association with coma, seizures and respiratory depression. Most reports of fatalities with positive postmortem PCP identify an alternate explanation for death, commonly acute trauma. [Caplan 1979, Poklis 1990, deRoux 2011] In one typical study, only 4 out of 104 PCP-positive fatalities were determined to be caused by PCP; in the other 96% of cases PCP was an incidental finding. [Poklis 1990] In Mr. Greer's case, it is very likely that he experienced severe asphyxia as a result of being held down forcefully in the prone position, making it difficult to breathe because a) his obese abdomen pressed upward on his diaphragm, and b) his rib cage expansion was impaired because of the officers' knees in his

INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(2)(B)

e

back. [O'Halloran 2000] This likely led to reduced gas exchange in the lungs, causing a drop in his oxygen level and a rise in his carbon dioxide level. The rising carbon dioxide would have increased the acidity of the blood, which would add to the acidosis caused by lack of oxygen, and this acidosis, combined with hypoxemia and increased levels of stress hormones (adrenalin, noradrenalin) could have caused acute heart failure and/or a fatal arrhythmia.

James Greer's postmortem blood was positive for the presence of PCP, but the measured level is inconclusive. The medical literature demonstrates a great deal of overlap between the ranges of nonfatal and fatal blood levels, and poor correlation between levels and clinical findings. [Bailey 1979, Cravey 1979] This can be explained, in part, by the confounding effect of traumatic injury causing death in patients with a nonlethal PCP concentration; in one study of 37 PCP-positive fatalities only two were directly attributable to the drug and these victims had very high blood levels of 1.5 mg/L and 25 mg/L.[Caplan 1979] In Mr. Greer's case, it is likely that the measured postmortem blood level of 0.596 mg/L was artificially high (perhaps as much as 10-fold) compared to what it was when he was initially stopped by police, due to the effects of acute respiratory and metabolic acidosis on the measured blood level. This is because PCP moves readily between tissues (muscle, fat, etc) and the blood, depending on the acidity of the blood (pKa of phencyclidine is 8.5 [Baselt, 9th ed]). When the blood is more acidic, PCP shifts from tissues into the blood. In Mr. Greer's final minutes before death, it is very likely that an extreme amount of acid built up in his blood due to impaired breathing, which caused an accumulation of carbon dioxide. Carbon dioxide combines with water to form carbonic acid, which increases the acidity of the blood.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 28, 2016

_____
Kent R. Olson, M.D.

INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(2)(B)