# EXHIBIT 13

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 2 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                         ---oOo---

 4

 5        _____
                                                  )
 6        JOSEPH JAMES GREER,                     )
                                                  )
 7                        Plaintiff,              )   Case Number:
                                                  )   3:15-CV-02307-WHO
 8                vs.                             )
                                                  )
 9        CITY OF HAYWARD; BAY AREA RAPID         )
          TRANSIT DISTRICT; MICHAEL CLARK;        )
10        JULIAN COSGRIFF; DANIEL                 )
          COVARRUBIAS; GUILLERMO DELIRA;          )
11        BRIAN LEWANDOWSKI; JEFF                 )
          LUPZINGER; NORM MCADAMS; SEAN           )
12        SPILLNER; BRANDON TONG                  )
          JON TOUGAS; RICK TRAN; DAVE             )
13        WATERS; BEN YARBROUGH; and              )
          Does 1-10,                              )
14                                                )
                          Defendants.             )
15        _____)

16

17                        DEPOSITION OF

18                   THOMAS WAYNE ROGERS, M.D.

19

20   DATE:          JUNE 23, 2016 (THURSDAY)

21   TIME:          1:07 P.M.

22   LOCATION:      CLAPP, MORONEY, BELLAGAMBA, VUCINICH
                      BEEMAN & SCHELEY
23                  1111 Bayhill Drive, Suite 300
                    San Bruno, CA  94066
24
     DEPOSITION     MELLONY L. KNIGHT, CSR
25   REPORTER:      Certified Shorthand Reporter, #8448
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
     Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 3 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 8

1  witness in Forensic Pathology in various counties in
2  California?
3      A.   Yes.
4      Q.   If you could tell us what is Forensic
5  Pathology.
6      A.   A pathologist performs autopsies.  A Forensic
7  Pathologist performs autopsies under legal/medical
8  situations, particularly for a Coroner's Office.
9      Q.   And so, you performed an autopsy in this case
10 on Mr. James Nathan Greer, correct?
11     A.   Yes, the individual identified to me as such.
12     Q.   Did you perform a forensic examination?
13     A.   Yes, I did.
14     Q.   I wanted to say forensic patho --
15     A.   Forensic autopsy.
16     Q.   Thank you.
17          Who asked you to do a forensic autopsy?  How
18 did that come about?
19     A.   The Coroner's Office of Alameda County.
20     Q.   Okay.  Do you work directly for them?
21     A.   I work for them as an independent contractor,
22 so I'm not a County employee.
23     Q.   In the context of examining Mr. Greer doing an
24 autopsy, how would you define -- what was a forensic
25 autopsy?  What does that mean in terms of what you did

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 4 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016                              Page 9

```
 1   here?
 2        A.  Well, it's an autopsy.  And I think the term
 3   "forensic" comes up in that it's being done in a
 4   Coroner's Office, which is a different situation from a
 5   hospital autopsy.  But basically the autopsy is still
 6   performed, and I would do the same type of autopsy that
 7   I do in a hospital that I would do in a Coroner's
 8   Office.
 9        Q.  Are you looking for the cause of death?
10        A.  They ultimate purpose of an autopsy is to
11   determine a cause of death.
12        Q.  You're not involved in the decision whether or
13   not there's going to be an autopsy or not, correct?
14        A.  In the Coroner's Office as to whether a body is
15   autopsied or not, there is some discretion that comes
16   from the pathologist, but in an autopsy or case of this
17   nature an autopsy is routinely done.
18        Q.  Why is it routinely done?
19        A.  It's just a matter of routine in a case like
20   this that comes up where the individual's been involved
21   with the police jurisdiction.  Ever since I've been in
22   the Coroner's Offices autopsies of this nature have been
23   done.
24        Q.  Okay.  And as I understand it -- here's what we
25   have, what I have in front of me from your file.  I have
```

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 5 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 10

```
 1    a memorandum dated May 27, 2014, "Subject:  Autopsy
 2    protocol."
 3         A.   Yes.
 4         Q.   And I also have a document titled,
 5    "Histological Examination."
 6         A.   Yes.
 7         Q.   And then I have 11 pages of a document that
 8    says, "External Examination."  I'm wondering if I'm
 9    missing a page.  It says page 2.
10         A.   I can explain.
11         Q.   Okay.
12         A.   The Autopsy Protocol it starts with the page
13    that you're looking at now.
14         Q.   It's Bates stamped 21, 221, JG00221 on the
15    right-hand side.
16         A.   I don't have that.  What number are you
17    referring to?
18              MR. ROONEY:  Lower-right corner.
19              THE WITNESS:  I don't have that on my report.
20    But the autopsy report or protocol consists of -- let's
21    say the first page or the title page is what you have,
22    and then it starts with page 2 and goes through page 12.
23              MR. VUCINICH:  Q.  And this Histological
24    Examination, where does that fit in?
25         A.   That's something separate.  I still consider it
```

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 6 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016
Page 11

```
 1   part of the autopsy, but just with the nature of the
 2   office.  The histology report is not incorporated into
 3   the autopsy protocol.
 4        Q.   Why not?
 5        A.   I don't know.
 6        Q.   Okay.  So why don't we do this.  Why don't we
 7   attach as Defendants' Exhibit 2 the autopsy report which
 8   starts with the memorandum we talked about and the 12
 9   pages.  It's a total of 12 pages, right?
10        A.   Yes.
11             MR. VUCINICH:  The first page is a memorandum,
12   on our end Bates stamped 221, and it goes to External
13   Examination page 12.  We'll mark all that as
14   Defendants' 2.
15             (Defendants' Exhibit No. 2 was marked
16        for identification.)
17             MR. VUCINICH:  What we're going to mark as
18   No. 3 is something you said that was separate and apart,
19   which is the Histological Examination.
20             THE WITNESS:  Yes.
21             MR. VUCINICH:  It's one page.  It happens to be
22   our Bates stamp 219.  I don't know why.  We'll mark that
23   as Defendants' 3.
24             (Defendants' Exhibit No. 3 was marked
25        for identification.)
```

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 7 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 12

1      MR. VUCINICH:  Q.  I do not know if I pulled
2  this from your file or something I had in front of me.
3  This is the Toxicology Report.
4      A.  Yes, this is the Toxicology Report on the
5  toxicology examination run on this particular case, and
6  this is the form that the Coroner's Office receives back
7  from the toxicology laboratory.  Now, the information is
8  entered into the computer system so if you look at the
9  case at a later date and pull up the toxicology results,
10 it's going to be in their computer system.  That's what
11 this form is.
12     Q.  And that's in your file?
13     A.  Yes.  It's with the material I have today.
14     Q.  Good enough.
15         We'll mark this as Defendants' Exhibit No. 4.
16         (Defendants' Exhibit No. 4 was marked
17     for identification.)
18     MR. VUCINICH:  Q.  Let's see in your file what
19 I didn't mark.
20     A.  We have the Histology.  This is a form that
21 relates to the case.  It kind of gives some actual
22 information on the case as to who the individual is.  It
23 also indicates various specimens and things that were
24 retained at the time of the autopsy.
25     Q.  So it's called Body Intake, page 1 of 1.

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 8 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016                          Page 13

1          Why don't we mark this as Defendants' 5.

2          (Defendants' Exhibit No. 5 was marked

3      for identification.)

4          MR. VUCINICH:  Q.  This is a copy of the

5  coroner's investigation report.  It's a six-page

6  document.  We'll mark this as Defendants' 6.

7          (Defendants' Exhibit No. 6 was marked

8      for identification.)

9          THE WITNESS:  And the toxicology, I think we

10 have already dealt with that, relates to the actual

11 toxicology report from CVT.

12         MR. VUCINICH:  It's a slightly different

13 document.  We'll mark this as Defendants' 7.

14         (Defendants' Exhibit No. 7 was marked

15     for identification.)

16         THE WITNESS:  And this is my C.V.

17         MR. VUCINICH:  We already have that.  So let me

18 get one thing.

19         THE REPORTER:  Off the record?

20         MR. HALEY:  Let's go off the record.

21         (Recess from 1:22 to 1:24 p.m.)

22         MR. VUCINICH:  Q.  So this autopsy was done

23 May 27, 2014, correct?

24      A.  Yes.

25      Q.  Back then what were your procedures, if you had

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 9 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 14

```
 1   one, certain procedures, what were they for doing an
 2   autopsy, Forensic Autopsy I should say?
 3         A.   I just call it an autopsy. And do the same thing
 4   or procedure on all cases.  But with the autopsy the
 5   body's on the table and an external examination is
 6   performed.  That means examining the body from head to
 7   foot.  Then an internal examination is performed.  This
 8   means removing the various major organs from the body
 9   and examining them.  Specimens are retained, and in this
10   case for toxicology.  And also Histology, which means
11   looking at tissue under the microscope.
12              At some point after that a cause of death is
13   formulated.  That basically is what the autopsy is.
14         Q.   In order to determine --
15              You're looking for the cause of death, right?
16         A.   Yes.
17         Q.   And would you have had the Autopsy Report --
18   not the Autopsy Report.  Sorry.
19              Would you have had the Toxicology Report before
20   you determined the cause of death?
21         A.   Yes.
22         Q.   And would you have done the Histology
23   Examination before you determined the cause of death?
24         A.   Yes.
25         Q.   The reason I ask that, I noticed the date, the
```

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 10 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 15

```
 1   signature is 6/19/14, but the memorandum is before that.
 2   That's why I was just wondering.
 3        A.   The memorandum on the first page says May 27th,
 4   2014 and that is the date that the actual autopsy or
 5   let's say dissection was performed.  Obviously at that
 6   time the blood sample is retained and sent to the
 7   laboratory.  The results come back at a point later in
 8   time.  That's why the Toxicology Report has a date after
 9   the autopsy itself.
10        Q.   Okay.  So let me ask you this.  With respect to
11   those documents entitled external -- well, these pages
12   that they end with page 12.
13        A.   Page 2?
14        Q.   Page 2 through 12.  What do you call these
15   pages, these documents?
16        A.   The thing in its totality, the 12 pages, is
17   called the Autopsy Protocol or Autopsy Report.
18        Q.   What did you do in this case to determine the
19   cause of death?  What did you do to determine the cause
20   of death?
21        A.   Okay.  Well, I did the autopsy dissection and
22   the findings, which are summarized on the first page of
23   the report.  This consisted of both the external and
24   internal examination.
25        Q.   That first page of the report is Exhibit No. 2.
```

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 11 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016

Page 50

1  A.  I don't remember in years and years
2  of ever going that far.
3  Q.  And in looking at your autopsy finding report,
4  specifically lines 18 through 24 at the bottom of
5  page 2 --
6  A.  Okay.
7  Q.  -- it indicates small amounts of blood were
8  found on both arms and scant amount of blood was found
9  on both sides of his face.
10  A.  Yes.
11  Q.  Was any determination made to determine who's
12  blood that was?
13  A.  No.
14  Q.  Then starting at line 44 and continuing through
15  line 75 your report refers to various abrasions and
16  contusions throughout Mr. Greer's body, correct?
17  A.  Yes.
18  Q.  Was any determination made as to how recent
19  those abrasions and contusions were?
20  A.  To the extent -- well, let me say that these
21  all looked like recent injuries to me.  And by recent I
22  mean that relative to the time the individual died they
23  could have occurred outwards within three days of him
24  dying.  Now, it's not possible to take injuries and
25  define how old they were beyond those parameters, it

Case 3:15-cv-02307-WHO   Document 61-15   Filed 12/14/16   Page 12 of 12

JOSEPH JAMES GREER vs. CITY OF HAYWARD, ET AL.
Thomas Wayne Rogers, M.D. on 06/23/2016                    Page 51

1  just can't be done.

2  Q.  But what they say on T.V. is not right?

3  A.  Let's say they can do it on television but I
4  can't.

5  Q.  Exactly.

6  A.  Just to elaborate further, they could have
7  occurred at the time of the incident. I have no way of
8  knowing if one of these abrasions that he fell and got
9  it a day early. I don't know.

10 Q.  From the time of the incident with the police
11 up until 72 hours before?

12 A.  Not the time of the incident with the police,
13 because he did linger on awhile in the hospital, if you
14 follow what I'm saying.

15 Q.  Okay. Let me rephrase it then.

16     So these abrasions or contusions anywhere from
17 the time of death up until 72 hours before his death.

18 A.  That's correct. And that 72 hours is kind of a
19 nebulous twilight. I mean there can be exceptions
20 around that.

21 Q.  A little plus or minus?

22 A.  Yes.

23 Q.  That would be the case for all of the abrasions
24 and contusions found in your report between lines 44 and
25 75?